Good morning. The police is the court Corey Glave on behalf of the appellant Taryn Valentin. What we have as the briefing has shown is we have a city council acting to reinstate a sworn peace officer, but in their research given rise to their decision to reinstate, they found out that the city may be liable for other damages or concealed evidence in the first series of litigations involving this disciplinary case. Therefore, the city requested that their attorneys enter into or offer Mr. Valentin reinstatement on the contingent that he enter into an agreement waiving all back pay and damages and waiving all claims, known or unknown, up to the point in time of the agreement. Mr. Valentin agreed to do this. There was negotiations into the reinstatement agreement and the terms and conditions of how he would come back to work. But the first part of that, as our briefing shows, was the city council voting in closed session and reporting out to the public that they had voted to reinstate his employment. Now is there anything in the city's civil service rules that address reinstatement? Should he have gone to the civil service commission first to be reinstated? No. The civil service commission provides an advisory opinion to the city council. For instance, when the disciplinary case first occurred, he filed his appeal to the civil service commission. Well, and the civil service commission said that termination was too extreme, but then the city council at that time still terminated him, correct? Correct. The civil service decided that 26 of the 27 charges were not sustained by the evidence and that he was guilty of administratively not doing the paperwork to transfer a handgun to Mr. Castillo. They rescinded the termination, but then the city council took the matter up and said, no, we think they didn't change any finding of fact, but they said... Did they take any new evidence? Is it a de novo hearing in front of the city council? They did not take any new evidence. They allowed the parties to argue the evidence that was already in the record, which was quite voluminous. I believe it was about 15 volumes. And then their decision was, no, we're still going to terminate him, but did not change any finding of fact. So in essence, the city council terminated based on the handgun charge. Which was one of 27. Is that right? Correct. They found that he had been truthful during the internal affairs investigation, that he had not interfered with the DEA investigation, and in fact, had furthered that investigation along based on his actions at a car stop involving the Castillo family. All right. So that's the termination. Then what happens? There is civil litigation regarding the city council's overturning of the civil service appeal and a discrimination lawsuit, two separate actions, both filed in L.A. Superior Court. L.A. Superior Court has a writ division and then the normal Superior Court litigation divisions. The writ decision, the court found that the city council had not followed its own policies and procedures in handling that matter and continually asked for clarifications of its finding that the city council did not provide. In the discrimination part of the case. Now, the civil service provided some clarification of its findings. That is correct. Now, at that point, did they change that they didn't even think that the firearm exchange was a problem? No. They continued to say, they clarified that they believed that was an administrative error because a new law had been passed as far as you now have to go through a registered dealer to transfer a firearm where you didn't before. And what happened in civil service was it was determined that the department didn't even know that section at the time. So they said, yes, you technically violated this section. However, you did retrieve your handgun. We believe, I forget what the, I think it was a suspension, was in order for not following that process. Unfortunately, we get to reinstatement. But I guess my concern is, was the reinstatement based on the results of this state litigation or was it an independent decision made by the city council? What the city council did is members of the Southgate Police Officer Association continued to fight and that was city council saying that Mr. Valentin was not treated fairly. And so the city council ordered or requested to look at the case and they had their city attorney or their contract attorneys research the entire case. They brought in all the litigation files. The first firm that had prosecuted the disciplinary case took some time and then gave them the files. And based on their review of the case and interviewing other employees, not Mr. Valentin, but employees of the city and city officials, they determined that there may have been some evidence that was not provided that should have been turned over or other facts or information. Based on that, the city council believed there was an injustice done to Mr. Valentin and that they were going to rescind his termination and reinstate his employment. But because... It's a different city council now, right? Right. As you will see, as the city councils change, the feelings of Mr. Valentin change or towards Mr. Valentin change. And we've always considered Mr. Valentin to be a political pawn of many organizations as it changed. The new city council looks at it, reviews it, believes an injustice occurred. One of the city council people that was Mayor Morial, I believe he initially voted to reinstate Mr. Valentin when they first heard the case, if I remember the process correctly, and Mr. Gonzalez also. And then they had to switch sides and voted in different directions based on the new city council. Or eventually there's reinstatement. There is reinstatement. But in the background research as to what led to the decision that an injustice occurred, they found information that information had been concealed. And they were also aware of other possible claims on defamation that had transpired since the litigation had been completed. Who concealed the information? Who's concealed it? The city attorney in his depositions just said it was concealed from Mr. Valentin prior. He never identified who or how or what it was that was actually concealed in his deposition. And we never had a chance to finish that deposition. All right. But now I'm trying to get to where we are today. And I gather then after the reinstatement there was a termination by order of whom? Okay. What happened was the city council wanted a reinstatement agreement so that he would waive all his prior claims and all claims to back wages. So he entered into that. Then two years after he is reinstated to the payroll and approximately a year after he's reinstated as a sworn police officer, a new city council comes in. The prior city council is recalled. A new city council comes in. And as soon as they take power, they notify Mr. Valentin, you're now going to be terminated as we believe your contract was against public policy. They never referred to in their documents the code section that is now referred to in this litigation, the government code section. Well, I have a question that I asked both parties to be ready to talk about the City of Orange. Yes. You never mentioned that. And the appellee's council put it as a C also after South Bay Senior Housing. So it appears to me that the district court, because you didn't really argue it and they put it as a C also, wasn't really putting those two relative to each other. What's your position about that? Is South Bay even good law after the City of Orange? Or how does this relate? Does it relate to your need to do discovery? One, I believe it does relate to the city council's ability to enter into settlement negotiations after they reinstate it. Well, why didn't you argue it? If you look at some of the motions that we had done for additional discovery, we had four court days to prepare our opposition based on how the motion was filed and served and the timing of depositions and everything else. Quite frankly, I must say I missed the case. I believe it is relevant to this case in that it shows the city council's ability to settle claims and enter into negotiations to settle claims. The reinstatement agreement, or here where the city says we're willing to reinstate you if you enter into this contract or into this reinstatement waiving all your claims. But what would it take for the new city council to effect a legal termination? Some new problem that might have arisen? I believe, yes. In his conduct, that sort of thing? Right. After he's reinstated to the payroll, he then becomes a full-time permanent employee. Well, I have a question about that. Your position is that he resumed patrol duties, and the appellees say he never returned to patrol duties, and they're claiming he was a civil employee. He was reinstated in September 2001. He became a sworn officer, and the certificate of him taking the oath was in July 2002. He was then terminated in May of 2003, and he, in fact, was on duty as a patrol officer at one time with a patrol car, at one time with a motorcycle, making arrests, and I believe he actually testified in court. Between July 2002 and 2003? July 2002, and then the termination took effect in May of 2003. Right. But you're saying he was a patrol officer during that time. Correct. He was a full-time sworn peace officer at that time. Is there evidence in the record that he was a motorcycle cop and on patrol and that he actually made an arrest? I need to know what's in the record. I don't believe that was in the record because that wasn't the issue in the summary judgment. The summary judgment was simply the contract, and we had pointed out that he continued his employment. Okay, but what does the record tell us about what his duties were between July 2002 and the time he was terminated? The record will show you that in July 2002, he took the oath of office for police officer for the police department. Prior to that time, approximately a year period before that. What's in the record that tells us what his duties were after July 2002? I don't believe there's anything in the record that talks about what duties he had. The reinstatement agreement talks that he will be in an administrative or non-sworn position until he meets these requirements, and then after he meets the requirements, he will become a sworn officer. The swearing in took place in July 2002, and that document certified by the assistant city clerk for the city is in the record. Going back to your honor's question about what would happen to terminate him, there would have to be good cause based on something that happened during his employment. Also, the city would have to comply with all the police officer Bill of Rights, California Government Code Section 3300, et cetera. And one of the contentions in this litigation was – Well, for that to apply, he would have had to have been successfully reinstated. And obviously, with their position, the appellees, when I'm saying their position, is that 1031 was not complied with and so forth, therefore the police officer's Bill of Rights never attached. Am I stating their position there? That is one of their positions. The district court did not decide the case on that fact. The district court decided that it was a void contract because someone other than the mayor signed it. Correct. And the district court, you didn't cite City of Orange, and they cited City of Orange as a seat also. Correct. I'd like to reserve some time for reply. You may do so. Well, what's your key argument at this stage in terms of the ultimate action by the city? We believe the ultimate action by the city in terminating the employment was incorrect. It was that they did not comply with due process or the police officer Bill of Rights and that he was a full-time employee for two years. He was a sworn officer, sworn peace officer, under the government code section from July of 2002 to May of 2003. There are procedural rules that they must follow. There are civil service rules, the procedural Bill of Rights, and due process in order to terminate that employment. They never did. What about this issue about the authority to sign the contract? We believe the municipal code has several sections that we've cited in our paper that allows a city manager or whoever's appointed an interim city manager or acting city manager to sign contracts that were ordered and approved by the city council, and we believe that actually happened here, and that the city council in their minutes or in the report out of closed session indicated that they had approved the reinstatement agreement. And then if you look at the reinstatement agreement where the signature is, the city council says they approved and authorized the acting interim city manager to sign the document, which was Margo Wheeler, according to the document. You know, what did Judge Reel determine in his summary judgment order with respect to that signing issue? It was not signed by the mayor. And therefore the reinstatement was invalid. Everything that flowed from that reinstatement was invalid. He did not address the point that the city council had already reinstated the employment. Well, he said it was void, and so then he denied you discovery, correct? But you were saying you needed discovery because to see if other contracts were signed this way or what exactly the effect was, but you didn't cite City of Orange. That is correct. Did he rule on the public policy? He did not. Well, I have a question on that. Since you didn't, you argued that his reinstatement was valid notwithstanding the reinstatement agreement. Since you did not move for summary judgment based on this argument, why should we reach that issue in the first instance? We were still conducting discovery with both the contract city attorney. We had depositions of all the defendants, including the city's person most knowledgeable, and they did not appear for deposition. Because they had filed a motion for summary judgment, we tried to move ex parte for a continuance and to conduct those depositions. And the judge simply said it was – Okay, but my point is let's assume that. You didn't move for summary judgment, but you're also asking us to find that it was valid. They're saying it wasn't valid and they prevailed down below making an argument of South Bay senior housing. But I don't see how as a matter of law if you didn't ask for summary judgment. Why should we reach that? Well, I believe the court, based on the ruling by the district court, can make that ruling that reinstatement by itself, by the city council's action, meant his employment was valid. And the contract, the reinstatement agreement, went to other issues as far as how the reinstatement was going to go, the waiver of claims, and everything else. So I think you have two separate issues. I thought when the city brought this that they were doing a high-risk move because if the reinstatement is found to be at the city council action and they now argue that the reinstatement agreement is invalid, that means Mr. Valentini would be entitled to several years of back pay because the waivers would have been invalid but not the reinstatement. Counsel, you asked to reserve some time. You may do so if you wish. Thank you. We'll hear from the city. Thank you, Your Honor. May it please the court, my name is Edward Zappia, and I'm here with my associate, Sherry Suica, on behalf of the city to present the city's request. Are you sharing time or will you be having the whole time? Ms. Suica is prepared to address the City of Orange case in detail and any other cases as requested by the court. Your side has 20 minutes total, so I just raise that issue. Thank you, Your Honor. I'm really interested in the City of Orange because I think that that's really important to this, so I'm wondering if you're lopsiding who should talk first. I can address the City of Orange case briefly if you have any further questions. We're very familiar with the City of Orange case. The City of Orange case is inapplicable to our situation, but if you look at the policy behind the case, it absolutely supports the city. It's not applicable because in the City of Orange, it was actually the city that was seeking to enforce a contract against an individual and was able to do so. The distinction, and it was this major distinction, is it was not an individual seeking to enforce a contract against an agency. In the policy and significance behind that case, it absolutely illustrates and points out the statutory, the mandatory statutory requirements that must be met without waiver to contract, to hold a city to a contract. And in that case, they further addressed the public policy, which was in that particular case the contractor had received the benefit and the city had incurred the obligation of the contract. So the court permitted it and specifically addressed the distinction and the significance of following the statutes. Well, let me ask you this. If Valentin could establish through the discovery that the city council relied on the city code, as written in 2001, as providing the city manager with authority to sign contracts, wouldn't he establish compliance with Government Code 4602? No, because that's not been established and the city manager didn't sign the contract. It was the director of development services. That is not permitted in the city code. And what the Mazetta and Orange County and South Bay cases hold that I think is absolutely critical here is you must follow the statutes, period. In those cases further say, if you try to do something that isn't directly prohibited by the statutes, that won't work either. Are you saying that there aren't any other contracts out there that they were doing the same thing on? I mean, we don't know because there's no discovery. I know, and the city revoked them all. I was the city's council in 2002. Is that in the record? It's not in the record. Okay. So on this case, but to answer your question, other contracts were invalidated and litigated, and the cities prevailed. Well, I'm not sure if there isn't a question of law or maybe a question of fact with respect to this very issue. You seem to assert as an Ipsy Dixit that only the mayor can sign. Now, I'm not quite sure I'm persuaded of that. Shouldn't we take evidence on that issue and find out? No, Your Honor, and I do assert that, except I assert that the mayor must sign by statute or under the applicable Southgate municipal code. If delegated, the city manager may sign. So they were interpreting their code at that time, though, to say that the city manager could sign. There's no evidence of that. I don't know what they were interpreting. I know what the statutes, both the government code and what the city municipal code states, and those codes state exactly the requirements that must be followed. And to address Your Honor, under the Southgate code, if delegated, the city manager may sign a contract. That was not done here either. So my point is, even if we were to accept appellant's premise and representations here, he's seeking for you to authorize an unauthorized manner of contracting. And the cases are clear that cannot be done. I don't see how, with all that we've discussed about this, how this could be a frivolous lawsuit and $75,000 in attorney's fees. I mean, I'm having trouble getting my head around all of this. And, you know, that right there tells me that there's something to – I mean, the judge here, you cited South Bay. The judge just said it was void, end of story, da-da-da-da-da-da. You know, I obviously see that there's a lot more issues here, and at the very least I don't see how this can be a frivolous lawsuit and that the appellant can be hit with $75,000 in legal fees. It's our position that they were lucky to get away with $75,000 in fees and no other criminal sanctions as other relevant parties were subjected to. In this case, the contract – I don't know what you're talking about here. In this case, the city attorney – You say relevant. That suggests that there's something in the record that connects this to some other parties in which we are unaware. In this record, the person who negotiated the contract on behalf of the city was someone who was posing as a city attorney but who was in fact disbarred. That's Christetta Cloparda. She was subsequently incarcerated in Chowchilla. That contract was reached with Mr. Glaive. You need only read the contract to see its unlawful purpose to evade the statutory hiring requirements of a peace officer. The purpose of the – Because there was an attorney who was later disbarred was part of the negotiation? She was the one who negotiated it, and that's in the record. The significance – And you're saying that that's the basis for rejecting the validity of the contract? I don't understand your argument. Rejecting the validity of the contract rests on two separate bases. The first is the one we've discussed, the statutory requirements of the signature that wasn't met. The second is the substance of the contract on its face. Reviewing the contract shows the whole purpose of this agreement was to reinstate a person into a peace officer position by evading all of the government code and Southgate code hiring and employment requirements of a peace officer. I need to – right there. What is your best authority that 1031 is mandatory for reinstated employees? I'm familiar with 1031. I know that we're talking, you know, new hires, and there's a case that talks about possibly if someone's transferred maybe or possibly to another position. But what's your best authority on it applies to reinstated employees? The fact that in the record, three separate background investigators did background investigations on Mr. Valentin under 1031 and failed him. And more significantly, I think in this record, we have letters from Mr. Glaive to Captain Todd telling him to limit the amount of background investigation under 1031.1. I guess what I'm struggling with here, I can see the contract itself, the reinstatement contract, if we just assume for a moment, does require compliance with 1031. But it also does some sealing of the particular instance that we're talking about. Now, just assume for a moment, I know you don't agree with this, but let's assume that the city council could reinstate someone and they could find that there were injustices that occurred. I know you don't agree that that's the case here, but I think that they could have the authority to do that. And then you reinstate someone, and maybe you found that the charges were not true, that they were completely exonerated, everything along those lines. Then what sense would it make that then a background investigation could go and disqualify someone from serving because of an instance that they were internally exonerated for? It just seems like, you know, how... I can answer your question. Every peace officer undergoes a background when they're promoted, when they go to a different situation, when they're hired. It's under conditional agreements that you pass a background. Right. But if you have, you were, there were some internal affairs, and you end up being exonerated on it, then how can that then be the reason that you don't pass a background again? I mean, what's the purpose of having all these procedures go on? I mean, does that mean because someone always said something about you and it's found not to be true that they can always bring it up and... Well, I guess I need to address your second underlying premise, that he was exonerated. The first five minutes of Mr. Glave's discussion was about prior litigation that occurred between 1996 and 2000. That litigation all resulted in the decision by the Court of Appeal in the city's favor. There's no exoneration. He's been judicially determined to have been terminated for good cause. Well, the Superior Court was different and ordered findings of the Civil Service Commission and the City Council. The City Council never made them. Then when it got to the Court of Appeal, the Court of Appeal just said, well, you're not entitled to... because you filed two separate actions and you didn't tell anyone, the Court of Appeal seemed to be irritated about that and said, so you're not entitled to this technical... I mean, I was kind of surprised by that. And that's correct. And then long after any opportunity to appeal occurred was when the reinstatement occurred. That decision was in 2000. It was never appealed. It was never challenged. It was never taken up. It was a year and a half later, in 2001, that this reinstatement took place where they're trying to relitigate issues in the prior litigation. Okay, but a reinstatement took place by order of the City Council, which presumably was properly in office, duly elected and all of that. I mean, are we challenging the validity of the decision of the City Council? Well, for purposes of this appeal, no. I think the entire City Council, much of the contract, many of the contracts they entered have, in fact, been challenged and reversed. But that's not in this record. All right. What about July 2002? Do you agree with Mr. Glaive that the appellant here took the oath as a patrol officer? Yes. And what is the significance of that? Well, the significance is when he was reinstated a year earlier, no police chief would swear him in. He sat at home for a year because Captain Todd at the time, Chief Toussaint, who was the chief at the time, and subsequently another interim chief, refused to swear him in. Chief Lopez did swear him in, but as he stated, I only did so because Robles would fire me if I didn't. Who was Robles? Robles was the former mayor and director, city manager, who's now serving 10 years in prison for his misconduct at Southgate. Notwithstanding that, he was sworn in, but he did not perform any duties. He sat at home because no chief would have anything to do with him, and he was brought in in violation of post, the department agreement. Three background investigators failed him, so yes, he got a reinstatement agreement. He sat home being paid for a year. Finally, Chief Lopez did swear him in, in a secret swearing-in ceremony, which is in the record, but he never... What is in the record with respect to his duties after he was sworn? Nothing. So when he says that he actually went on patrol and all of that, that's not in the record, and when you say that he never resumed patrol activities, that's not in the record either. So, in fact, both sides are making statements outside the record on that particular point. What's in the record is he was sworn in. Correct. Okay. I mean, this makes it hard when everyone... You know, there's all sorts of stuff that's not in the record. Counsel, you were arguing that the reinstatement agreement was void against public policy. What is there in the record that would tend to show that the reinstatement order was intentionally drafted to avoid these other requirements that you've talked about? We have Mr. Glade's letter, two letters, to Captain Todd at the time, telling Captain Todd that his background investigation should not go back to the point in time when Mr. Valentin was involved in a drug ring and auto theft. His own letters and his own evidence seek to circumvent the background investigation. That's the best evidence. In addition, in the record, Mr. Valentin did not undergo any probationary period, which is a Peace Officer Standards and Training requirement. He never underwent that probationary period because he couldn't pass it. He never underwent a complete background investigation. That's in the record because he couldn't pass it. He never underwent a psych evaluate or a polygraph. Well, I guess, though, but isn't this all contested from the standpoint that his position is that 1031 was different for a reinstatement? Your position is that it has to be like a new hire. I can't find any case that exactly answers that. And the reinstatement agreement does something to seal the instant offense. Which is exactly why it's substantively unlawful. Our point is the agreement on its face. Well, but I need a case that says that in a reinstatement situation that that means that a person goes back to a background from, obviously, Mr. Valentin passed a background first. Then he has this situation in the middle, which goes through the courts all of this time. And then, eventually, he achieves a reinstatement. Now, during that period of time, he's not at work. He's fired for how many years? He was terminated, actually, in 1996. And he was reinstated in 2001. Okay, so why can't you read the reinstatement agreement to say, okay, yeah, you have to go through it. Because we don't know what he did from 96 to 2001. For all we know, and I'm just saying this, let's say he started using drugs and police officers can't use drugs. So from 96 to 2001, or he's gotten convicted of crimes, or there's any number of things. Well, that could cause him to fail a background at that time. So why can't the reinstatement agreement be interpreted to mean that, yeah, we've got to figure out what you've been doing since you were fired. And that's what Mr. Glave was trying to limit it to, right? If I may, if you may pardon me, to correct the facts, he was subject to three background investigations after he was reinstated. When he was reinstated, correct, while he was sitting at home being paid, but the chiefs refused to swear him in, they did bring in three separate background investigators. So wasn't the whole sticking point about what they could go into, about what happened in this instance? Absolutely. And that's where everyone was, you know, Mr. Glave's position was, hey, he got reinstated and the reinstatement agreement says that this part is sealed. The city's position was, no, even though you got reinstated, we get to go into everything again, and that can be a basis for failing a background. It's not exactly the city's position. The city's position is you precluded us from going into everything, as is the department's practice, which is why he kept writing letters to the captain in charge of background saying don't go into this area. Well, I don't understand how the city could be precluded. It's an autonomous choice. I agree. Yet that's exactly what they attempted to do. Yeah, but the city in the end reinstated. The city council circumvented its own rules and government requirements to reinstate him, the city council at the time. That's true. And when the new city council came in, they made a determination that because he had not met either the state or city requirements to terminate his contract. Okay. County of Riverside basically says that 1031 may not apply to all situations. There the court stated that Section 1031 contemplates that new applicants be subject to the background investigation before they are hired. But the court also recognized that Section 1031's requirements could be imposed on a police officer transferring from one agency to another or perhaps an officer applying for a different position with the same agency. It seems that the court fell short of mandating prescribing 1031 in reinstatement. And so what I see 1031's applicability here comes in the reinstatement agreement. So then what does that mean? You know, what were the – I mean, you're saying as a matter of law that 1031 applies to everyone in a reinstatement. Correct. I don't see that case as saying that. Do you have a better case for me? I don't know that I have a better case. What I do have is the Southgate Municipal Code, which further mandates that all safety officers meet all post requirements as well because Southgate gets substantial funding for following all of these requirements. So if there's any issue about the applicability of the government code to a government agency, the Southgate City Council makes it expressly part of their own hiring processes in order to procure the funding that comes to agencies for compliance. Was the funding ever actually threatened as a result of this case? Yes. As a matter of fact, it was. There's letters, I believe in this record, from post to the chief at the time stating, your background investigations are faulty. We're coming to investigate you. Now, did they say – Karen Valentines was one of four that were specifically at issue. That's a letter from Russ Kinderman, the director of post hiring and training requirements to Chief Lopez at the time. And as I'm running short on time, if I may just address one other point that I think is of significance. In this case, I believe what the appellant's position generally is, it doesn't matter how I got hired, if you're a public employee, you're employed by statute. In every case we've cited, Snow, Kenimer, Pinion, Campbell, those cases all hold, you are only able to use the public statutory due process requirements if you obtained them appropriately and legitimately. So even if we adopt his argument, it's our position, it's better for the city, because he did not meet any of the statutory requirements upon which he now tries to rely to obtain benefits and due process rights. Thank you, Counselor, your time has expired. Thank you, Your Honor. Mr. Aglaive, you have some reserve time. The first point I would like to address as well, in the motion for summary judgment, there is not evidence as to Officer Valentin's duties. In his verified complaint, and on the appellant's appendix at page 009 through 0012, there is pleadings that he has verified as to him returning to patrol duties and certain acts of retaliation that occurred when he returned to those duties. So there is some evidence in the record as to him returning to his full patrol duties. In regards to the questions on the post requirements, there is an Attorney General's opinion, and I don't have the site in front of me, I apologize, that indicates that Penal Code Section 1031 applies to new hires or to lateral officers from other agencies, as was the case, I believe, in the Riverside case on Officer Bill of Rights. There are letters in there from POST, and two of their representatives were contacted when we were looking at the reinstatement agreement to indicate what is required from POST. POST did not require any background done on a reinstatement. Their theory is a reinstatement means that employment continues. Now where is this in the record? There are pages, there's letters from Albright, E. Smith, to their own city attorney indicating that they had contacted POST, and there's an email regarding my contact with Izzy Flores that talked about they don't require a background investigation, but what do they recommend is that for the period of that absence that a background be done to indicate to see if there is anything that has occurred since the disputed time period, the termination until the reinstatement. Okay, so he had a background when he was initially hired. Correct. Then we have this incident, which we've all gone through. Then there's the reinstatement, and the reinstatement agreement does contemplate that there be some background done. Correct. So your position is it was from 1996 to 2001? Correct. From the time that he was terminated to the time that he's reinstated, and it didn't count the incident giving rise to the termination because the city had already agreed that the termination was an unjust termination and rescinded that termination. So if you look at the process, he's being reinstated back to that time of discipline, but given a 30-day suspension. So he never, in theory, left that employment. So the first background, finding him fit, continued. Now what they wanted to make sure was during the interim of his termination, nothing happened there. He didn't go out and commit crimes. There was no reason that he could no longer carry a weapon, and he also was required to go through a requalification course for post. Any time that you're out of employment, I believe it's three years or more, they require you to go through the requalification course. He completed all those tasks. He was given background investigations, but one of the things I want to clarify is Mr. Zappia continually referred to the city was limited. The city was limited. No, the city agreed. Who didn't agree to this was Captain Todd, who then became Chief Todd. He's the one that was doing the background investigations and that we believe interfered with those background investigations, raised the concern with the city, and they agreed, wait a minute, this is what the time period was supposed to be. You're asking your background investigators, because they were controlling who he'd go to and who did the investigations, and they were saying you must consider this disciplinary case. So we had that taint. Your time has expired, Counsel. I thank the Court for its consideration. The case just argued will be submitted for decision, and we will hear argument in Watson versus the County of Los Angeles. Thank you, Counsel. Counsel, for the appellant, you may proceed.
judges: Hall, O'scannlain, Callahan